UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| STEPHANIE B.,[1] | ) |
| | ) |
| *Plaintiff,* | ) |
| | ) |
| v. | ) No. 1:22-cv-00541-MG-SEB |
| | ) |
| KILOLO KIJAKAZI, Acting Commissioner of the | ) |
| Social Security Administration, | ) |
| | ) |
| *Defendant.* | ) |

## ENTRY REVIEWING THE COMMISSIONER'S DECISION

On September 26, 2019, Plaintiff Stephanie B. applied for Title II disability insurance benefits ("DIB") from the Social Security Administration ("SSA"), alleging a disability onset date of December 1, 2018. [Filing No. 5-2 at 21; Filing No. 5-7 at 2.] Her application was initially denied on January 22, 2020, [Filing No. 5-5 at 6-14], and upon reconsideration on May 15, 2020, [Filing No. 5-5 at 16-22]. Administrative Law Judge Jody Odell (the "ALJ") conducted a video hearing on April 6, 2021. [Filing No. 5-3.] The ALJ issued a decision on July 30, 2021, concluding that Stephanie B. was not entitled to receive benefits. [Filing No. 5-2 at 18-37.] The Appeals Council denied review on February 4, 2022. [Filing No. 5-2 at 2-7.] On March 21, 2022, Stephanie B. filed this civil action asking the Court to review the denial of benefits according to 42 U.S.C. § 405(g). [Filing No. 1.]

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

1

The parties consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. [Filing No. 9.] For the reasons set forth below, the Court **REVERSES** the ALJ's decision denying Stephanie B. benefits and **REMANDS** for further proceedings.

## I.
### STANDARD OF REVIEW

"The [SSA] provides benefits to individuals who cannot obtain work because of a physical or mental disability." *Biestek v. Berryhill*, __U.S.__, 139 S. Ct. 1148, 1151 (2019). Disability is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018) (citing 42 U.S.C. § 423(d)(1)(A)).

When an applicant appeals an adverse benefits decision, the Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Id.* For purposes of judicial review, "substantial evidence" is such relevant "evidence that 'a reasonable mind might accept as adequate to support a conclusion.'" *Zoch v. Saul*, 981 F.3d 597, 601 (7th Cir. 2020) (quoting *Biestek*, 139 S. Ct. at 1154). "Although this Court reviews the record as a whole, it cannot substitute its own judgment for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled." *Stephens*, 888 F.3d at 327. Reviewing courts also "do not decide questions of credibility, deferring instead to the ALJ's conclusions unless 'patently wrong.'" *Zoch*, 981 F.3d at 601 (quoting *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017)). The Court does "determine whether the ALJ built an 'accurate and logical bridge' between the evidence and the conclusion." *Peeters v. Saul*, 975 F.3d 639, 641 (7th Cir. 2020) (quoting *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014)).

The SSA applies a five-step evaluation to determine whether the claimant is disabled. *Stephens*, 888 F.3d at 327 (citing 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4)). The ALJ must evaluate the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform her past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000), *as amended* (Dec. 13, 2000) (citations omitted). "If a claimant satisfies steps one, two, and three, she will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then she must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After step three, but before step four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id.* The ALJ uses the RFC at step four to determine whether the claimant can perform her own past relevant work and if not, at step five to determine whether the claimant can perform other work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), (v). The burden of proof is on the claimant for steps one through four; only at step five does the burden shift to the Commissioner. *See Clifford*, 227 F.3d at 868.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Stephens*, 888 F.3d at 327. When an ALJ's decision does not apply the correct legal standard, a remand for further proceedings is usually the appropriate remedy. *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021). Typically, a remand is also

3

appropriate when the decision is not supported by substantial evidence. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). "An award of benefits is appropriate only where all factual issues have been resolved and the 'record can yield but one supportable conclusion.'" *Id.* (quoting *Campbell v. Shalala*, 988 F.2d 741, 744 (7th Cir. 1993)).

## II.
### BACKGROUND

Stephanie B. was 46 years old on the date of her alleged onset of disability. [Filing No. 5-2 at 32.] She has a high-school education and prior work experience as an assembler, corrections officer, animal caretaker, painter of structural steel, power coating applicator, construction painter, and paint sprayer/sandblaster. [Filing No. 5-2 at 32.] Stephanie B.'s original application alleges that she can no longer work because of psychosis, PTSD, anxiety, nightmares and voices in her head, traumatic brain injury, chronic pain, vertigo and damage to her left ear, a history of a knee replacement, a history of a broken kneecap, lumbar disc disease post-surgery, cervical disc disease post- multi-level fusion, and a "frozen" right shoulder.[2] [Filing No. 5-8 at 6.]

The ALJ followed the five-step sequential evaluation set forth in 20 C.F.R. § 404.1520(a)(4) and concluded that Stephanie B. was not disabled. Specifically, the ALJ found as follows:

- At Step One, Stephanie B. had not engaged in substantial gainful activity[3] during the period at issue. [Filing No. 5-2 at 23.]

- At Step Two, Stephanie B. "has the following severe impairments: degenerative disc disease of the lumbar spine, with radiculopathy; degenerative disc disease of the cervical spine; degenerative joint disease of the left knee, status-post arthroplasty; frozen right

---

[2] The relevant evidence of record is amply set forth in the parties' briefs and need not be repeated here. Specific facts relevant to the Court's disposition of this case are discussed below.

[3] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572(a).

shoulder; anxiety[;] depression[;] schizophrenia; and post-traumatic stress disorder (PTSD)." [Filing No. 5-2 at 23.]

- At Step Three, Stephanie B did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. [Filing No. 5-2 at 24.] Relevant here, as to the "paragraph B" criteria for Listings 12.03 (Schizophrenia spectrum and other psychotic disorders), 12.04 (Depressive, bipolar and related disorders), 12.06 (Anxiety and obsessive-compulsive disorders), and 12.15 (Trauma and stressor-related disorders), the ALJ found that Stephanie B. had "moderate" limitations in the areas of (1) concentrating, persisting or maintaining pace; (2) interacting with others; and (3) adapting or managing oneself. [Filing No. 5-2 at 25.] The ALJ found that she had a "mild" limitation in the area of understanding, remembering, or applying information. [Filing No. 5-2 at 25.]

- After Step Three but before Step Four, Stephanie B. had the RFC "to perform light work as defined in CFR 404.1567(b) except she can frequently reach in all directions, and overhead, with the right upper extremity. She can occasionally climb ramps, stairs, ladders, ropes, and scaffolds. She can occasionally balance, stoop, kneel, crouch, and crawl. She must never work in vibration or operate a motor vehicle. She can never interact with the general public, but she can tolerate occasional interaction with supervisors and coworkers. She can concentrate, attend, and persist for two hours at a time, up to eight hours in a workday. She is able to manage routine changes in the work environment." [Filing No. 5-2 at 26.]

- At Step Four, relying on the testimony of the vocational expert ("VE") and considering Stephanie B.'s RFC, she was unable to perform any of her past jobs. [Filing No. 5-2 at 32.]

- At Step Five, relying on the VE's testimony and considering Stephanie B.'s age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that she could perform, such as marker, garment sorter, and odd piece checker. [Filing No. 5-2 at 33.]

### III.
#### DISCUSSION

On appeal, Stephanie B. argues that the ALJ erred: (1) by not adequately addressing her mental limitations in the RFC; and (2) by improperly discrediting her testimony about her subjective symptoms under SSR[4] 16-3p.

---

[4] Social Security Rulings ("SSR") are interpretive rules intended to offer guidance to ALJs and are "binding on all components of the Social Security Administration." 20 C.F.R. § 402.35(b)(1); *Laurer v. Apfel*, 169 F.3d 489, 492 (7th Cir. 1999).

### A. Stephanie B.'s Moderate CPP Limitations and the RFC

Stephanie B. first argues that although the ALJ found that she has a moderate limitation in the area of concentration, persistence, and pace ("CPP") at Step Two, the ALJ then failed to adequately account for this moderate limitation in the RFC finding. [Filing No. 11 at 22.] More specifically, Stephanie B. argues that the RFC's limitation that she can "can concentrate, attend, and persist for two hours at a time, up to eight hours in a workday," (1) does not reflect a moderate CPP limitation at all, and (2) fails to adequately connect the dots between the evidence and this RFC limitation. [*See* Filing No. 11 at 22.] On the first point, she contends that the finding that she can persist for two hours at a time for up to eight hours, is "indicative of no impairments in attention, concentration, or pace" because a typical worker receives breaks every two hours during the course of an eight-hour workday. [Filing No. 11 at 22-23.] On the second point, Stephanie B. argues that this two-hour limitation is not supported by the ALJ or the record because none of the state agency reviewers nor any of the medical records opined to this limitation. [Filing No. 11 at 23.] And, "[a]bsent support in the record for the two-hour limitation, the ALJ has impermissibly formulated her own independent medical opinion regarding the effects (or lack of effects) of the claimant's moderate difficulties of [CPP]." [Filing No. 11 at 23 (internal alterations and quotation marks omitted).]

In response, the Commissioner says that the ALJ adequately supported the two-hour limitation by observing that, based on medical records, Stephanie B.'s mental impairments were "well controlled," so long as she adhered to treatment. [Filing No. 13 at 14 (citing Filing No. 5-2 at 30-31).] The Commissioner also points out that Stephanie B. "did not produce an opinion from a treatment provider specifying that she had concentration limitations," and further, the state agency consultants "did not specify that [Stephanie B.] could ***not*** concentrate in two-hour

segments." [Filing No. 13 at 15 (emphasis added).] The Commissioner next argues that Stephanie B. fails to identify "what mental limitations the RFC unreasonably omitted" and says that Seventh Circuit precedent requires that she do so. [Filing No. 13 at 16 ("[Stephanie B.] never says how the mental RFC should have more favorably accommodated her and thus the Court cannot know what the ALJ got wrong or why it matters.").] Furthermore, says the Commissioner, Stephanie B. ignores that under SSA regulations, a "moderate rating" in CPP means that her "functioning in an area independently, appropriately, effectively, and on a sustained basis is fair," and that "fair" means "sufficient but not ample or adequate." [Filing No. 13 at 16 (internal alterations, citations, and quotation marks omitted).] And, the Commissioner points out that the Seventh Circuit has sustained a two-hour limitation in a case where the claimant had a "marked" (rather than moderate) limitation in the area of CPP. [Filing No. 13 at 17.] Finally, the Commissioner argues that with regard to the state agency consultants' checklist ratings, Stephanie B.'s arguments are misplaced because the ALJ found those aspects of their opinions to be unpersuasive. [Filing No. 13 at 18.]

In her reply, Stephanie B. cites cases that support the proposition that a two-hour limitation is no limitation at all. [Filing No. 14 at 4-5.] She also says that "the ALJ did not explain how her positive response to medications equated her being able to enter the workforce." [Filing No. 14 at 5.]

The RFC represents "the most [a person] can do despite [the] limitations" caused by that individual's medically determinable impairments. 20 C.F.R. § 404.1545. CPP "refers to the abilities to focus attention on work activities and stay on task at a sustained rate." 20 C.F.R. Pt. 404, Supt. P, App. 1 § 12.00E(3). "[B]oth the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record." *Yurt v. Colvin*, 758 F.3d 850, 856 (7th Cir. 2014). "[W]hen an ALJ finds there are documented

7

limitations of [CPP], the hypothetical question presented to the VE must account for these limitations." *Winsted v. Berryhill*, 923 F.3d 472, 476 (7th Cir. 2019). The RFC and hypotheticals "must account for both the complexity of the task and the claimant's ability to stick with a task over a sustained period." *Warren v. Colvin*, 565 F. App'x 540, 544 (7th Cir. 2014). *See also Varga v. Colvin*, 794 F.3d 809, 814-15 (7th Cir. 2015) (holding that further limitation of "free of fast paced production requirements, including only simple work related decisions with few if any work place changes and no more than occasional interaction with coworkers or supervisor" was insufficient to capture claimant's CPP limitations).

At Step Three, the ALJ found that Stephanie B. had a moderate limitation in the area of CPP. [Filing No. 5-2 at 25.] In making this determination, the ALJ cited medical records showing that Stephanie B. "generally presented with normal memory and cognition, with isolated findings of impaired memory in the context of a brief, medication noncompliance induced psychotic break." [Filing No. 5-2 at 25.] The ALJ again cited medical evidence to find that Stephanie B.'s "attention and concentration typically ranged from fair to normal, although greater impairment in attention and concentration are noted in the inpatient [mental health] treatment records." [Filing No. 5-2 at 25.] The ALJ observed that, so long as she adhered to her medication, Stephanie B.'s thought processes "were typically described as logical, sequential, [and] goal-oriented." [Filing No. 5-2 at 26.]

The ALJ next translated the moderate CPP limitation into an RFC that limited Stephanie B. to jobs which limit the worker to "concentrate, attend, and persist for two hours at a time, up to eight hours in a workday." [Filing No. 5-2 at 26.] The ALJ recited record evidence, including Stephanie B.'s reports that she can "go shopping, use a checkbook and handle savings account, prepare meals, and pursue interests such as painting," [Filing No. 5-2 at 26], as well as her

8

statement that she could not concentrate for more than an hour at a time and had difficulty following instructions, [Filing No. 5-2 at 27]. The ALJ also acknowledged records of Stephanie B.'s emergency room visits for mental disturbances during December 2018 and September 2019; extended inpatient treatment in September 2019 during which she reported suicidal ideation; and subsequent treatment records from 2020 when she reported that she was doing well with medication. [Filing No. 5-2 at 29-30.] The ALJ also discussed a report generated by Elizabeth Rayl, PhD following a psychological consultative examination in January 2020, documenting that Stephanie B.'s "memory and concentration were fair. She completed the serial threes task, but could not complete serial sevens." [Filing No. 5-2 at 29-30.] The ALJ also discussed and partially rejected the opinions of state agency psychological consultants Dr. Ken Lovko, PhD and Dr. Donna Unversaw, PhD, who both found that Stephanie B. should be limited to jobs of "simple, repetitive tasks." The ALJ found this limitation unpersuasive because "evidence received at the hearing level does not support restrictions to simple repetitive tasks and instructions." [Filing No. 5-2 at 31.]

The Court addresses Stephanie B.'s second point—that the ALJ failed to connect the dots between the evidence and the CPP limitation—first. "An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions." *Varga*, 794 F.3d at 813. Here, while the ALJ generally thoroughly summarized the evidence, she did not build a logical bridge to explain in any detail what evidence led her to the conclusion that Stephanie B. had the ability to attend, concentrate, and persist for two hours at a time, up to eight hours in a workday. *See Crump v. Saul*, 932 F.3d 567, 571 (7th Cir. 2019) (holding that an ALJ's RFC analysis must "say enough" to enable review); *see also Lashonda M. v. Saul*, 2021 WL 2659596, at *8 (S.D. Ind. June 28, 2021) ("[N]owhere in the ALJ's decision does

9

he make it clear how he arrived at the two-hour interval figure. No state agency doctor or any other doctor offered this opinion. Absent support in the record for the two-hour interval, the ALJ "impermissibly formulated his own independent medical opinion regarding the effects (or lack of effects) of the claimant's moderate difficulties of concentration, persistence, or pace.") (internal citation, quotation marks, and brackets omitted). While the ALJ noted Stephanie B.'s improvement with medication and treatment, "the ALJ did not explain how those improved symptoms enabled [Stephanie B.] to consistently maintain [her] concentration and attention under normal job conditions." *Anthony S. v. Kijakazi*, 2022 WL 1153109, at \*6 (S.D. Ind. Apr. 18, 2022). Missing here is an explanation from the ALJ connecting the evidence to her conclusion that Stephanie B. can concentrate two hours at a time.

Of note, no state agency psychological consultants or treating medical providers address a two-hour limitation. This lack of evidentiary support distinguishes this case from several of the cases that the Commissioner cites. [Filing No. 13 at 17]. *See, e.g.*, *Peeters v. Saul*, 975 F.3d 639, 642 (7th Cir. 2020) (ALJ properly adopted RFC based on the state agency psychologists stated limitations); *Burmester v. Berryhill*, 920 F.3d 507, 512-13 (7th Cir. 2019) (ALJ reasonably relied on medical expert who translated concentration limitations into RFC determination that claimant could "understand, remember and carry out simple instructions"); *Recha v. Saul*, 843 F. App'x 1, 3-4 (7th Cir. 2021) (citing state agency consultants and consultative examiner's findings to support RFC's CPP limitation); *Lockett v. Saul*, 834 F. App'x 236, 239 (7th Cir. 2020) (proper for ALJ to rely on medical expert's limitations to simple, repetitive tasks).

Here, the problem is the ALJ's lack of explanation coupled with the absence of a medical expert opining that Stephanie B.'s moderate CPP limitations were adequately accounted for with a two-hour limitation. The Court rejects the Commissioner's "opinion by omission" argument that

10

because the state agency consultants did not opine that Stephanie B. "could *not* concentrate in two-hour segments," they implicitly opined that she could do so. [Filing No. 13 at 15. (emphasis added).] The Commissioner has not provided any support for this theory.

Finally, the Commissioner argues that Stephanie B. has not attempted to show harm from the ALJ's error by not advancing what additional limitations are needed to accommodate her symptoms. [Filing No. 13 at 16 (citing *Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019).] But the Seventh Circuit has further clarified that *Jozefyk* is limited to scenarios where "the claimant had not testified about any restrictions in his capabilities related to [CPP], and the medical evidence did not otherwise support any such limitations." *Crump*, 932 F.3d at 571. Here, as the ALJ discussed and recognized in her decision, the medical evidence and Stephanie B.'s testimony shows that she suffers from some CPP limitations. [*See, e.g.*, Filing No. 5-3 at 21 (describing anxiety attacks); Filing No. 5-8 at 22 (statement that she has trouble focusing on financial tasks because of her anxiety); Filing No. 5-8 at 23 (statement that she can concentrate for an hour when she paints).] Therefore, this case is easily distinguished from *Jozefyk*.

In summary, because the ALJ did not create the requisite logical bridge between the evidence and the RFC for Stephanie B.'s moderate CPP limitation, remand is required. The Court takes no position on whether the two-hour limitation is supported by the evidence. That is a decision for the ALJ to sufficiently articulate on remand.[5]

---

[5] Because the Court finds that the ALJ failed to create a logical bridge between the evidence and the two-hour restriction, the Court need not address Stephanie B.'s assertion that such a limitation is no limitation at all. [Filing No. 11 at 22-23.] The Court observes, though, that the Seventh Circuit has at least implicitly suggested that the two-hour restriction *may* sufficiently account for some degree of CPP limitations. *See Delong v. Saul*, 844 F. App'x 894, 900 (7th Cir. 2021) (noting the distinction between non-impaired workers who "can sustain focus for *at least* two hours" versus the RFC "*limit[ing]* [claimant's] sustained attention to two hours at a time").

**B. Other Issues**

Because the Court finds that remand is appropriate for the reasons discussed above, the Court need not address the other arguments that Stephanie B. raises on appeal.

## IV.
### CONCLUSION

For the reasons detailed above, the Court **REVERSES** the ALJ's decision denying Stephanie B. benefits and **REMANDS** this matter for further proceedings pursuant to 42 U.S.C. § 405(g) (sentence 4) as detailed above. Final judgment will issue by separate entry.

Date: 3/21/2023

*Mario Garcia*
Mario Garcia
United States Magistrate Judge
Southern District of Indiana

**Distribution via ECF to all counsel of record.**